IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| DONNA S. KIMBLE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 18-00301 ACK-RT |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER REVERSING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS

For the reasons discussed below, the Court REVERSES the decision of the Commissioner and REMANDS to the ALJ for further administrative proceedings consistent with this Order.

## BACKGROUND

On September 2, 2014, Plaintiff Donna S. Kimble ("Plaintiff") filed a Title II application for a period of disability and disability insurance benefits ("SSDI") and a Title XVI application for supplemental security income ("SSI"), alleging disability beginning on January 6, 2013. Administrative Record ("AR") 234–44. The applications were initially denied on February 5, 2015 and then denied upon reconsideration on July 10, 2015. AR 174–81, 190–97. Plaintiff then requested a hearing before an administrative law judge

- 1 -

("ALJ"), which was held on December 14, 2016 and at which Plaintiff appeared and testified. AR 198–200.

On January 10, 2017, the ALJ issued her written decision[1/] finding that Plaintiff was not disabled. AR 22–48. Finding no reason to review the ALJ's decision, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner on November 13, 2017. AR 5–10.

Plaintiff filed a Complaint on August 6, 2018, seeking a review of the denial of her applications for SSDI and SSI benefits. ECF No. 1. On December 31, 2018, Plaintiff filed her Opening Brief ("Opening Br."). ECF No. 16. On March 4, 2019, Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security (the "Commissioner"), filed her Answering Brief ("Ans. Br."). ECF No. 18. Plaintiff filed a Reply Brief ("Reply Br.") on March 31, 2019.

The Court held a hearing on May 17, 2019 regarding Plaintiff's requested review of the Commissioner's decision.

**STANDARD**

A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of

---

[1/] It appears that the written decision was reissued on October 3, 2017, the only difference from the January 10, 2017 decision being an appended five-page List of Exhibits cited in the decision. AR 49–76.

Social Security.[2/]

A final decision by the Commissioner denying Social Security disability benefits will not be disturbed by the reviewing district court if it is free of legal error and supported by substantial evidence. See 42 U.S.C. § 405(g); Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016) (reviewing a district court's decision de novo). Even if a decision is supported by substantial evidence, it "will still be set aside if the ALJ did not apply proper legal standards." See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 523 (9th Cir. 2014).

In determining the existence of substantial evidence, the administrative record must be considered as a whole, weighing the evidence that both supports and detracts from the Commissioner's factual conclusions. See id. "Substantial evidence means more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). "If the evidence can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." Id. (internal quotation marks omitted). Rather,

---

[2/] 42 U.S.C. § 1383(c)(3) incorporates the judicial review standards of 42 U.S.C. § 405(g), making them applicable to claims for supplemental security income.

courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014).

But reviewing courts must be cognizant of the "long-standing principles of administrative law [that] require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009); see also S.E.C. v. Chenery Corp., 332 U.S. 194, 196 (1947) (if the grounds "invoked by the agency . . . are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis").

## DISCUSSION

"To establish a claimant's eligibility for disability benefits under the Social Security Act, it must be shown that: (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any

other substantial gainful employment that exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); see 42 U.S.C. § 423(d)(2)(A). A claimant must satisfy both requirements in order to qualify as "disabled" under the Social Security Act. Tackett, 180 F.3d at 1098.

## I. The Social Security Administration's ("SSA") Five-Step Process for Determining Disability

The Social Security regulations set forth a five-step sequential process for determining whether a claimant is disabled. Dominguez v. Colvin, 808 F.3d 403, 405 (9th Cir. 2014); see 20 C.F.R. § 404.1520(a)(4).[3/] "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (citations omitted in original); see 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof as to steps one through four, whereas the burden shifts to the Commissioner for step five. Tacket, 180 F.3d at 1098.

At step one, the ALJ will consider a claimant's work activity, if any. 20 C.F.R. § 404.1520(a)(4)(i). If the ALJ finds the claimant is engaged in substantial gainful activity,

---

[3/] The relevant provisions governing SSI set forth in 20 C.F.R. Part 416 are identical to those for SSDI set forth in 20 C.F.R. Part 404. Accordingly, the Court will only cite to the latter regulations.

the ALJ will determine that the claimant is not disabled, regardless of the claimant's medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is work that is defined as both substantial (i.e., work activity involving significant physical or mental activities) and gainful (i.e., work activity done for pay or profit). 20 C.F.R. § 404.1572. If the ALJ finds that the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. Tackett, 180 F.3d at 1098.

Step two requires the ALJ to consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). Only if the claimant has an impairment or combination of impairments that "significantly limits [her] physical or mental ability to do basic work activities" will the analysis proceed to step three. 20 C.F.R. § 404.1520(c). If not, the ALJ will find the claimant is not disabled and the analysis stops. 20 C.F.R. § 404.1520(a)(4)(ii).

The severity of the claimant's impairments is also considered at step three. 20 C.F.R. § 404.1520(a)(4)(iii). Here, the ALJ will determine whether the claimant's impairments meet or equal the criteria of an impairment specifically described in the regulations. Id.; see also 20 C.F.R. Part 404, Subpart P, App. 1. If the impairments meet or equal these criteria, the claimant is deemed disabled and the analysis ends.

20 C.F.R. § 404.1520(a)(4)(iii).  If not, the analysis proceeds
to step four.  20 C.F.R. § 404.1520(e).

Step four first requires the ALJ to determine the
claimant's residual functional capacity ("RFC").  Id.; 20 C.F.R.
§ 404.1520(a)(4)(iv).  RFC is defined as the most the claimant
can still do in a work setting despite her physical and mental
limitations.  20 C.F.R. § 404.1545(a)(1).  In assessing a
claimant's RFC, the ALJ will consider all of the relevant
evidence in the claimant's case record regarding both severe and
non-severe impairments.  20 C.F.R. § 404.1545.  This assessment
is then used to determine whether the claimant can still perform
her past relevant work.  20 C.F.R. § 404.1520(e).  Past relevant
work is defined as "work that [the claimant has] done within the
past 15 years, that was substantial gainful activity, and that
lasted long enough for [the claimant] to learn to do it." 20
C.F.R. § 404.1560(b)(1).  The ALJ will find that the claimant is
not disabled if she can still perform her past relevant work, at
which point the analysis will end. Otherwise, the ALJ moves on
to step five.

In the fifth and final step, the ALJ will once again
consider the claimant's RFC, as well as her age, education, and
work experience, in order to determine whether the claimant can
perform other work.  20 C.F.R. § 404.1520(a)(4)(v).  Here, the
Commissioner is responsible for providing "evidence that

demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do."  20 C.F.R. § 404.1520(g)(1).

## II.  The ALJ's Analysis

### A. Steps One, Two, and Three

The ALJ found that at step one, Plaintiff had not engaged in substantial gainful activity since January 6, 2013, the alleged disability onset date, and at step two, that she suffered from the following severe impairments: major depressive disorder; post traumatic stress disorder; history of headaches; fibromyalgia; degenerative disk disease of the cervical spine; history of endometriosis; history of chronic pelvic pain; interstitial cystitis; Hunner's ulcers status-post cystoscopy; and asthma.  AR 54–56.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 56–58. Specifically, the ALJ found that Plaintiff's spinal condition did not meet the listed criteria for disorders of the spine, and that her asthma condition did not meet the listed criteria for asthma.  AR 56; 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.04 and 3.03.  The ALJ found that Plaintiff's mental impairments, considered singly and in combination, did not meet or medically

equal the criteria related to depressive, bipolar and related disorders, and anxiety and obsessive-compulsive disorders.  AR 56–58; 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.04 and 12.06.  Plaintiff does not appear to challenge any of the findings the ALJ made at these steps.  <u>See generally</u> Opening Br.

### B. Steps Four and Five

Moving to steps four and five, the ALJ determined Plaintiff's RFC to be medium work, which involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds, with additional limitations.  AR 58; <u>see also</u> 20 C.F.R. § 404.1567(c).  The ALJ determined that:

> [Plaintiff] cannot climb ladders, ropes, or scaffolds.  She can frequently climb ramps or stairs.  The claimant is limited to frequent overhead reaching bilaterally.  She is limited to low-stress work, which is defined as simple and routine tasks with short instructions and simple, work-related decisions.  The claimant is limited to gradual and infrequent workplace changes.  Furthermore, the claimant must avoid concentrated exposure to extreme temperatures, wetness, humidity, dust, fumes, pulmonary irritants, and hazards.  Moreover, the claimant can perform work that requires no interaction with the general public.

AR 58.  Based on this RFC, the ALJ determined at step four that Plaintiff is unable to perform any past work as a "counselor" or "nanny."  AR 73.  However, the ALJ determined at step five that

a finding of "not disabled" is appropriate because Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  AR 73–74.

Plaintiff asserts that the ALJ's finding that she is "not disabled" is not grounded in substantial evidence, and therefore the ALJ erred in concluding that she is not disabled because there is other work she can perform.  Opening Br. at 1. Specifically, Plaintiff argues that the ALJ improperly rejected the opinions of Plaintiff's doctors and improperly rejected Plaintiff's own testimony.  Opening Br. at 1–2.

Finally, the Court notes that throughout the ALJ's decision, she states she adopted a light work RFC with additional limitations.  AR 68, 70, 72.  However, the ALJ, without any explanation, ultimately adopted a medium work RFC with additional limitations.  AR 58, 73–74.  Plaintiff points this inconsistency out only in footnotes, Opening Br. at 22 n.2; Reply Br. at 9 n.2 and the Commissioner only discussed it at the hearing held on May 17, 2019.  However, the Court notes that at the hearing before the ALJ, the vocational expert testified that there were adequate medium occupations with additional limitations and adequate light occupations with additional limitations that Plaintiff could perform.  AR 103–05.  Thus, although this discrepancy within the ALJ's decision is somewhat

disturbing, it appears that it had no impact on the ALJ's ultimate disability determination.

## III.  Whether the ALJ Improperly Rejected the Opinions of Plaintiff's Physicians

In her Opening Brief, Plaintiff challenges the ALJ's rejection of four medical opinions as improper.  Opening Br. at 12–15.  Three opinions are from three of Plaintiff's treating physicians: Dr. Aliza Kumpinsky, a neurologist, Dr. Samir Belagaje, another neurologist, and Dr. Daniel Cucco, a psychiatrist; and the remaining opinion is from Dr. Jessie Al-Amin, a consultative examining physician.[4/]  Opening Br. at 12–13.

### A. Standards for Weighing Medical Opinion Evidence

In assessing whether or not a claimant is disabled, the ALJ must "develop the record and interpret the medical evidence," considering the "combined effect of all of claimant's impairments, regardless of whether any one impairment, considered alone, would be of sufficient severity.  Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996); 20 C.F.R. § 416.923).  However, the ALJ is not obligated to discuss "every piece of

---

[4/] A consultative examining physician is contracted by the SSA to conduct a consultative examination for purposes of aiding the Commissioner in making a disability determination.  20 C.F.R. § 404.1519.

evidence" where the evidence is "neither significant nor probative." Id. Ultimately, "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545).

Courts must distinguish among the opinions of three types of physicians when evaluating an ALJ's weighing of medical evidence.[5] Garrison v. Colvin, 759 F.3d 995, 1012 (2014). Courts distinguish between the opinions of "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); see also 20 C.F.R. § 404.1527(c). "Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014) (citing Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir; 2001); 20 C.F.R. § 404.1527(c)).

---

[5] The Court notes that for claims filed on or after March 27, 2017, the treating source rule does not apply. See 20 C.F.R. § 404.1520c.

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." Ukolov, 420 F.3d at 1004. A treating physician's opinion should be given controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record. Ghanim, 763 F.3d at 1160 (alteration in original, citation omitted). "To reject an uncontradicted opinion of a treating physician, the ALJ must provide 'clear and convincing reasons that are supported by substantial evidence.'" Id. at 1160–61 (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)).

"Even if a treating physician's opinion is contradicted, the ALJ may not simply disregard it." Id. at 1161. Rather, to determine how much weight to give a treating physician's opinion, the ALJ must consider the following factors: the length of the treatment relationship and frequency of examination by the treating physician; the nature and extent of the treatment relationship between the patient and the treating physician; the supportability of the treating physician's opinion with medical evidence; the consistency of the treating physician's opinion with the record as a whole; and

whether or not the treating physician is a specialist.  Id.; see
also 20 C.F.R. § 404.1527(c)(1)-(6).

An ALJ may only reject a treating physician's
contradicted opinions by providing "specific and legitimate
reasons that are supported by substantial evidence."  Ghanim,
763 F.3d at 1161.  "The ALJ can meet this burden by setting out
a detailed and thorough summary of the facts and conflicting
clinical evidence, stating [her] interpretation thereof, and
making findings."  Tommasetti v. Astrue, 533 F.3d 1035, 1041
(9th Cir. 2008) (alteration in original).  "The ALJ must do
more than state conclusions.  [She] must set forth [her] own
interpretations and explain why they, rather than the doctors',
are correct."  Garrison, 759 F.3d at 1012.  "[A]n ALJ errs when
[she] rejects a medical opinion or assigns it little weight
while doing nothing more than ignoring it, asserting without
explanation that another medical opinion is more persuasive, or
criticizing it with boilerplate language that fails to offer a
substantive basis for [her] conclusion.  Id. at 1012-13.

Similarly, an examining physician's opinion is
entitled to greater weight than that of a nonexamining
physician.  Lester, 81 F.3d at 830.  The ALJ must provide clear
and convincing reasons for rejecting the uncontradicted opinion
of an examining physician; and if the opinion is contradicted by
another physician, the ALJ can only reject it by providing

specific and legitimate reasons that are supported by
substantial evidence in the record.  Id. at 830-31.

 With this framework in mind, the Court considers
whether the ALJ properly rejected the opinions of Plaintiff's
physicians.

### B. The Medical Opinions of Dr. Kumpinsky

 Dr. Kumpinsky is one of Plaintiff's treating
neurologists.  AR 689.  Dr. Kumpinsky first examined Plaintiff
on November 5, 2015, and examined her again on May 5, 2016.  AR
at 689-92, 860-64.  Plaintiff and Dr. Kumpinsky also spoke by
telephone once on November 12, 2015.  AR 699.

 On May 26, 2016, Dr. Kumpinsky completed a form
entitled "Pain Questionnaire" and opined that Plaintiff suffered
from musculoskeletal tension headaches with cervicogenic and
vascular components, which caused severe pain on a daily basis.
AR 786-87.  She noted that Plaintiff's depressed affect and
muscle tension in her neck and face served as objective findings
supporting Plaintiff's pain diagnosis, and that it was medically
reasonable for Plaintiff to lie down for a minimum of two hours
during the daytime.  AR 786-87.  That same date, Dr. Kumpinsky
completed another form titled "Supplemental Questionnaire—
Residual Functional Capacity."  AR 788-89.  Therein, Dr.
Kumpinsky explained that Plaintiff has poor insight into her
pain; that it causes her to sleep poorly which impacts her

ability to function effectively; and that her headaches, combined with her interstitial cystitis and fibromyalgia contribute to her depression and anxiety. AR 788–89.

The ALJ assigned "little weight" to Dr. Kumpinsky's May 26, 2016 opinions,[6/] finding (1) that Dr. Kumpinsky was not a long-term treating source physician; (2) that the record demonstrated Plaintiff's headaches improved with a drug holiday; (3) that Dr. Kumpinsky provided no explanation regarding Plaintiff's need to lie down for two hours during the day; and (4) that Plaintiff's other treating source physicians demonstrated that Plaintiff displayed unremarkable signs. AR 69. The Court addresses each of these findings in turn.

### 1. Whether the ALJ Failed to Consider the Factors in 20 C.F.R. § 404.1527(c)

Plaintiff first argues that the ALJ erred in finding that Dr. Kumpinsky was not a long-term treating physician, particularly where the ALJ gave greater weight to the opinion of an examining physician who saw Plaintiff only once and to two opinions of nonexamining physicians. Opening Br. at 15–16.

The ALJ asserted that "Dr. Kumpinsky is not a long-term treating source physician, which undermines the conclusion

---

[6/] The Court notes that the ALJ erroneously stated Dr. Kumpinsky examined Plaintiff on May 26, 2016, AR 69, when in fact Dr. Kumpinsky examined Plaintiff on May 5, 2016. AR 680. Nowhere does the ALJ's decision acknowledge Plaintiff's May 5, 2016 visit with Dr. Kumpinsky.

that this opinion should be given much weight." AR 69. The
Commissioner asserts that the ALJ's rejection of Dr. Kumpinsky's
opinions was proper because the rule deferring to a treating
source physician is not a hard-and-fast rule; rather, the
relationship should be viewed as a series of points on a
continuum reflecting the duration of the treatment relationship
and the frequency and nature of the contact. Ans. Br. at 13-14;
see Benton v. Barnhart, 331 F.3d 1030, 1038 (9th Cir. 2003).

In Lester, the Ninth Circuit ruled that it was
improper for an ALJ to reject an examining psychologist's
opinion due to "limited observation" of the claimant while
giving greater weight to the opinion of a nonexamining
physician. 81 F.3d at 833 (noting further that "[w]hile this
would be a reason to give less weight to [an examining
physician's] opinion than to the opinion of a treating
physician, it is not a reason to give preference to the opinion
of a doctor who has never examined the claimant) (emphasis in
original). Here, it was improper for the ALJ to reject Dr.
Kumpinsky's opinions and give more weight to the opinion of an
examining physician who saw Plaintiff only once, and to the
opinions of two nonexamining physicians.

The ALJ also erred because she failed to consider that
Dr. Kumpinsky was a specialist in neurology. The regulations
generally require an ALJ to give more weight to the opinion of a

specialist about medical issues related to their area of specialty than to the medical opinion of a source who is not a specialist. 20 C.F.R. § 404.1527(c)(5). The Commissioner asserts that Plaintiff provides no factual basis for her contention that Dr. Kumpinsky is a specialist, Ans. Br. at 17, but the AR is clear that Dr. Kumpinsky is, indeed, a neurologist. See AR 689-92, 860-64. Next the Commissioner argues that because Dr. Kumpinsky was still a neurology resident, there is no indication that she had specialized knowledge. Ans. Br. at 17. However, the fact that Dr. Kumpinsky was still completing her residency is no reason to reject her opinion. See Scholtz v. Astrue, No. C 07-1054 VRW, 2008 WL 2441370, at *8 (N.D. Cal. June 13, 2008) (providing that a physician's psychiatric opinion could not be rejected solely because the physician was still completing his psychiatry residency).

Accordingly, the Court finds that the ALJ erred in assigning little weight to Dr. Kumpinsky's opinions because the ALJ failed to properly consider two of the 20 C.F.R. § 404.1527(c) factors: (1) Plaintiff's treating relationship with Dr. Kumpinsky; and (2) the fact that Dr. Kumpinsky was a specialist in neurology. See 20 C.F.R. § 404.1527(c)(2), (5).

### 2. Whether the ALJ's Other Reasons for Rejecting Dr. Kumpinsky's Opinions Were Inadequate

Plaintiff next argues that the ALJ erred because she "manufacture[d] a conflict" by weighing notes of improvement against disabling limitations where the record shows only brief or partial improvement. Opening Br. at 16. The ALJ stated that because Plaintiff's "headaches improved after a drug holiday," Dr. Kumpinsky's opinions about the severity of Plaintiff's headaches should not be given much weight.[7] Opening Br. at 16; AR 69. This reason is improper when a claimant's medical records indicate only a brief or partial response to treatment. Garrison, 759 F.3d at 1013.

Indeed, Dr. Kumpinsky's treatment notes dated May 5, 2016 indicate that Plaintiff "[was] doing a little bit better from a headache standpoint" but was still having two to three headaches per week. AR 861. Significantly, it is unclear whether the ALJ even reviewed Dr. Kumpinsky's treatment notes dated May 5, 2016. The ALJ apparently believed that Dr. Kumpinsky evaluated Plaintiff on May 26, 2016, and nowhere in the ALJ's decision does she discuss the May 5, 2016 visit or treatment notes.

---

[7] On November 5, 2015, Dr. Kumpinsky ordered a two-week drug holiday from Gabapentin and Amitriptyline. AR 692.

Additionally, at the hearing before the ALJ, the ALJ stated her belief that after the drug holiday, Plaintiff "didn't have any headaches."  AR 92.  Plaintiff corrected the ALJ and informed her that she is still "having a lot of headaches," between six and twelve per month.  AR 92.  Plaintiff's testimony,[8] as well as Dr. Kumpinsky's own treatment notes, indicate that the drug holiday only partially helped Plaintiff's headaches.  Accordingly, the Court finds that Plaintiff's partial improvement due to the drug holiday was an improper reason for rejecting Dr. Kumpinsky's opinions.[9]  See Garrison, 759 F.3d at 1013.

The ALJ also rejected Dr. Kumpinsky's May 26, 2016 opinions because several treating physicians, a consultative physician, and a consultative psychologist explained that she displayed "numerous unremarkable signs," citing to a series of medical records in support of this conclusion.  AR 69.  However, the ALJ failed to explain which "unremarkable signs" conflicted with Dr. Kumpinsky's opinions.  An ALJ errs when she "merely

---

[8] As the Court discusses infra, the ALJ rejected Plaintiff's testimony for a variety of improper reasons.

[9] Moreover, the Court notes that the drug holiday apparently proved to be a disaster for Plaintiff.  Dr. Kumpinsky's notes indicate that Plaintiff tried to stop the Amitriptyline and Gabapentin for two weeks, but was unable to do so due to pain.  AR 699.  On December 8, 2015, Plaintiff ultimately ended up in the emergency room due to headache pain from the drug holiday.  AR 761.

states that the objective factors point toward an adverse conclusion and makes no effort to relate any of these objective factors to any of the specific medical opinions and findings [s]he rejects." Embry v. Bowen, 849 F.2d 418, 422 (9th Cir. 1998).

The Court finds that the ALJ erred in rejecting Dr. Kumpinsky's opinions with this conclusory explanation. To disregard a treating physician's opinions, the ALJ must "set forth specific, legitimate reasons for doing so, and this decision must be based on substantial evidence." Embrey, 849 F.2d at 421. The ALJ must set out a "detailed and thorough summary of the facts and conflicting evidence, stat[e] her interpretation thereof, and mak[e] findings." Tommasetti, 553 F.3d at 1041. This the ALJ did not do—she merely stated that other physicians found Plaintiff had "unremarkable signs" and failed to describe how this evidence conflicted with Dr. Kumpinsky's opinions.

Plaintiff also takes issue with the ALJ's finding that Dr. Kumpinsky did not explain Plaintiff's need to lie down for two hours each day. However, although Dr. Kumpinsky's opinions were "check-box" opinions that did not feature much explanation, such opinions are not to be read in a vacuum. It is improper for an ALJ to reject a "check-box" opinion if the ALJ fails to recognize that the opinions expressed therein are supported by

the record—in particular the opining physician's treatment records.  Garrison, 759 F.3d at 1014.  Here, the ALJ apparently did not consider Dr. Kumpinsky's May 5, 2016 treatment note, which discusses Plaintiff's persistent fibromyalgia pain, chronic headaches, and lack of sleep.  AR 860–64.  Moreover, Dr. Belagaje (whose opinion the ALJ ignored entirely) noted that the headaches were still frequently occurring and hindering Plaintiff's quality of life.  AR 865.  Accordingly, the Court finds the limited detail on Dr. Kumpinsky's "check-box" opinion is insufficient grounds for rejecting it, as it appears to be supported by numerous medical records.  See Burrell v. Colvin, 775 F.3d 1133, 1140 (9th Cir. 2014) (finding that an ALJ erred in rejecting a "check-box" form that lacked detail but was supported by the record).

Finally, the Court notes that in rejecting Dr. Kumpinsky's opinions regarding Plaintiff's headaches, the ALJ failed to acknowledge that Dr. Belagaje opined Plaintiff's fibromyalgia might be playing a role in the headaches.  AR 865.  The Ninth Circuit has noted that it is improper for an ALJ to require objective evidence for a disease that eludes measurement, in particular where the ALJ also rejects the claimant's symptom testimony.  See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004).  Fibromyalgia is one such disease.  Id.  As the Ninth Circuit explained in Revels v. Berryhill,

"[f]ibromyalgia is diagnosed entirely on the basis of patients'
reports of pain and other symptoms, and there are no laboratory
tests to confirm the diagnosis."  874 F.3d 648, 663 (9th Cir.
2017) (citing Benecke, 379 F.3d at 390).

In sum, the Court finds that the ALJ failed to
consider all of the criteria set forth in 20 C.F.R. § 404.1527—
namely, the nature of Dr. Kumpinsky's treating relationship with
Plaintiff and the fact that Dr. Kumpinsky was a neurology
specialist—and that the other reasons the ALJ gave for rejecting
Dr. Kumpinsky's May 26, 2016 opinions were neither specific nor
legitimate reasons supported by substantial evidence.

### C. The Opinions of Dr. Cucco and Dr. Belagaje

Plaintiff argues that the ALJ erred because she failed
to consider the opinions of Dr. Cucco and Dr. Belagaje, giving
no weight to these opinions and rejecting them without comment.
Opening Br. 19–20.  The Commissioner argues that the Court
should infer the ALJ's basis for rejecting Dr. Cucco's opinions
based on the ALJ's brief summary of the opinions; and that the
ALJ did not have a duty to discuss Dr. Belagaje's opinion.  Ans.
Br. at 20–22.

### 1. Whether the ALJ Erred in Silently Rejecting Dr. Cucco's Opinions

Dr. Cucco, one of Plaintiff's treating psychiatrists,
examined Plaintiff on July 5, 2016, and again on October 27,

2016.  AR 894-98; 939-42.  During the first visit, Dr. Cucco

diagnosed Plaintiff with post-traumatic stress disorder.  AR

894.  Dr. Cucco's treatment notes after the second visit

indicate that Plaintiff's symptoms "are severely limiting her

function and prevent her from interacting in social situations

in life."  AR 940.  Moreover, her intrusive thoughts about her

trauma and related symptoms "severely impair her everday [sic]

function and ability to complete day to day activities."  AR

940.  While the ALJ briefly described Dr. Cucco's examinations;

with respect to the second examination she failed to mention any

of the negative information that Dr. Cucco observed about

Plaintiff's symptoms.[10/]  AR 66-67.

　　　　The Commissioner first appears to argue that Dr.

Cucco's opinions are not medical opinions within the meaning of

the regulations, referring to the second treatment note as a

"so-called opinion."  Ans. Br. at 21.  The regulations provide

that "[m]edical opinions are statements from physicians and

psychologists or other acceptable medical sources that reflect

judgments about the nature and severity of [the claimant's]

impairment(s), including [the claimant's] symptoms, diagnosis,

---

[10/] The Commissioner asserts that Dr. Cucco's discussion of
severe limitations is "merely Plaintiff's reading of the note."
Ans. Br. at 21.  The Court finds this assertion somewhat
perplexing, given that the note in fact refers to severe
limitations, which the ALJ failed to mention.  AR 67, 939-940.

and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." <u>Montalbo v. Colvin</u>, 231 F. Supp. 3d 846, 855 (D. Haw. 2017) (citing 20 C.F.R. § 416.927(a)(2)). Nothing appears to suggest that Dr. Cucco, one of Plaintiff's treating psychiatrists, did not provide a medical opinion within the meaning of the regulations. AR 939. Accordingly, the Court rejects this argument.

The Commissioner next notes that reviewing courts may draw specific and legitimate inferences from an ALJ's conclusion where the ALJ does not provide a specific basis for rejecting a medical opinion. Ans. Br. at 21; <u>see</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755 (9th Cir. 1989). Here, the Commissioner suggests that the Court should infer the ALJ rejected Dr. Cucco's opinions about how Plaintiff's severe impairments limit her everyday functioning because he also observed some unremarkable objective signs. Ans. Br. 21. The Commissioner also suggests that the ALJ rejected one of Dr. Cucco's opinions because it is "merely a rehashing of Plaintiff's subjective claims." Ans. Br. 21.

The Commissioner appears to suggest that the Court should engage in a sort of <u>post hoc</u> rationalization in order to justify the ALJ's rejection of Dr. Cucco's opinions, but this is impermissible. <u>See</u> <u>Bray</u>, 554 F.3d 1225-26 (courts may not

engage in "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking"). Moreover, Dr. Cucco was a treating psychiatrist (i.e., a specialist), and the ALJ was required to consider and give specific and legitimate reasons supported by substantial evidence if she decided to reject Dr. Cucco's opinions. Lester, 81 F.3d at 830-31. Accordingly, the Court finds that it was improper for the ALJ to reject Dr. Cucco's opinions without providing any reasons for doing so.

### 2. Whether the ALJ Erred in Failing to Consider Dr. Belagaje's Opinion

Dr. Belagaje, a treating neurologist who examined Plaintiff on May 5, 2016, agreed with Dr. Kumpinsky's findings about Plaintiff. AR 865. He also drafted a treatment note of his own with additional findings based on his examination. AR 865. Specifically, Dr. Belagaje noted that Plaintiff's headaches are multifactorial, appearing to be tension headaches with some migraine features. AR 865. He also noted that Plaintiff's fibromyalgia may be playing a component in her headaches. AR 865. Finally, he noted that while the drug holiday may have improved a rebound component of her

headaches,[11/] the headaches are still frequently occurring and hindering Plaintiff's quality of life. AR 865.

The foregoing indicates that Dr. Belagaje did not merely endorse Dr. Kumpinsky's treatment note as the Commissioner would have the Court believe. Ans. Br. at 22. As this Court has noted, "[t]he Ninth Circuit has plainly held that an ALJ may not ignore a treating or examining doctor without even mentioning him." Montalbo, 231 F. Supp. 3d at 856; see also 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."), (c) ("Regardless of its source, we will evaluate every medical opinion we receive."). Dr. Belagaje was a treating neurologist (albeit one who only saw Plaintiff once), yet the ALJ failed to even mention his opinion. This was error.

The Commissioner relies on Howard for the proposition that the ALJ need not discuss "a medical note that simply relies on and repeats another opinion or assessment that the ALJ has already addressed." Ans. Br. at 22; see 341 F.3d 1006 at 1012. This argument fails because it mischaracterizes the case law. In Howard, the court went on to note that because the medical

_____

[11/] A rebound headache is a headache caused by medication overuse. Perrin v. Berryhill, 4:16-CV-04178-LLP, 2017 WL 7050670, at 21 n.5 (D. S.D. Nov. 27, 2017).

note that the ALJ failed to mention was based on a
neuropsychologist's report, the medical note was neither
significant nor probative and, therefore, did not warrant
discussion.  341 F.3d at 1012.  Thus, the rule from Howard that
an ALJ need not discuss every piece of evidence does not apply
where the evidence is significant or probative.  See Williams v.
Astrue, No. CV 09-07584 RZ, 2010 WL 3035741, at *1 (C.D. Cal
Aug. 2, 2010).

The Court finds that the Dr. Belagaje's opinion was
both significant and probative for the reasons discussed above—
namely, Dr. Belgaje found that the drug holiday was not as
helpful as the ALJ believed, and that fibromyalgia played a role
in Plaintiff's headaches.  Accordingly, the ALJ erred in failing
to so much as mention the opinion of Dr. Belagaje
notwithstanding that Dr. Belagaje only examined Plaintiff on one
occasion.

### D. The Opinions of Dr. Al-Amin

Plaintiff next objects to the ALJ's treatment of Dr.
Al-Amin's opinion, to which the ALJ gave significant weight.  AR
68.  Dr. Al-Amin, a physician to whom the SSA sent Plaintiff for
a consultative examination, examined Plaintiff on December 26,
2014.  AR 469-77.  Plaintiff objects to the ALJ's treatment of
Dr. Al-Amin's opinion in two respects.  First, Plaintiff argues
that the ALJ erred in ignoring (and therefore rejecting) Dr. Al-

Amin's opinion that Plaintiff "may lift as tolerated." Opening
Br. at 20–21; AR 68, 473. Second, she argues that the ALJ erred
in giving partial weight to the portion of the opinion in which
Dr. Al-Amin found that "[p]rolonged standing or walking may be
problematic" and "[s]tooping or bending may be problematic." AR
473. Plaintiff complains that instead of finding the words
"problematic" and "prolonged" vague and giving these opinions
partial weight, the ALJ instead should have reached out to Dr.
Al-Amin for clarification pursuant to 20 C.F.R. § 404.1519p(b).
AR 68; Ans. Br. 21–22. The Court addresses these arguments in
turn, noting first that Plaintiff does not object to the fact
that the ALJ gave Dr. Al-Amin's opinion significant weight in
general—Plaintiff only objects to the two aforestated aspects of
how the ALJ treated Dr. Al-Amin's opinion.

### 1. Whether the ALJ Properly Rejected Dr. Al-Amin's Opinion that Plaintiff Could Lift As Tolerated

The Commissioner argues that the ALJ should be excused
from providing specific and legitimate reasons for rejecting Dr.
Al-Amin's opinion that Plaintiff "may lift as tolerated" because
in accepting Dr. Alawode Oladele and Dr. Maxwell Eidex's
opinions[12] that Plaintiff could lift and carry up to 50 pounds

---

[12] Dr. Oladele and Dr. Eidex are state medical consultants. AR
69. On January 3, 2015, Dr. Oladele reviewed Plaintiff's
medical file and concluded that she could lift or carry 25
pounds frequently and 50 pounds occasionally and could stand,
(Continued...)

occasionally and 25 pounds frequently, she implicitly rejected Dr. Al-Amin's opinion.  Ans. Br. at 19; AR 68–70, 118–19, 151. The Commissioner argues that the ALJ interpreted Dr. Al-Amin's opinion into "the only concrete restrictions available to" her as justification for her reliance on Dr. Oladele and Dr. Eidex's opinions.  Ans. Br. at 19; see Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

The Court finds that Stubbs-Danielson is inapposite to the instant case.  In Stubbs-Danielson, a physician opined that the claimant was moderately limited in several respects, but he did not opine on whether the claimant could perform unskilled work on a sustained basis.  539 F.3d at 1173.  Another physician opined that the claimant should be restricted to "simple tasks." Id. at 1174.  The court found that the ALJ translated the claimant's condition, "including the pace and mental limitations, into the only concrete restrictions available to him"—the other physician's recommended restriction to "simple tasks."  Id.

---

walk, and sit during six hours of an eight-hour workday.  AR 69, 109–37.  On June 29, 2015, Dr. Eidex reviewed Plaintiff's medical file and came to virtually the same conclusions about Plaintiff as Dr. Oladele.  AR 69, 140–73.  Notably, Dr. Oladele and Dr. Eidex reviewed Plaintiff's file before she saw Dr. Kumpinsky, Dr. Belagaje, and Dr. Cucco.  The ALJ gave partial weight to the opinions of Dr. Oladele and Dr. Eidex.  AR 70.

Here, Dr. Al-Amin opined that Plaintiff could "lift as tolerated," while Dr. Oladele and Dr. Eidex opined that she could lift and carry up to 50 pounds occasionally and 25 pounds frequently.  AR 68–70.  Unlike the physicians in Stubbs-Danielson, one of whom did not opine on the claimant's ability to work, the physicians here all opined on Plaintiff's lifting ability.  The ALJ provided no explanation in resolving this apparent conflict.

As this Court has noted, the Court "is constrained to review the reasons the ALJ asserts; otherwise a reviewing court will be unable to review those reasons and without improperly substituting [its] conclusions for the ALJ's or speculating as to the grounds for the ALJ's conclusions."  Montalbo, 231 F. Supp. 3d at 857 (citing Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Bray, 554 F.3d at 1225).  Like in Montalbo, the ALJ does not discuss this evidentiary conflict, and the Court may not speculate as to how the ALJ resolved it.  231 F. Supp. 3d at 857.  This is particularly true here, where the ALJ noted in her discussion of Dr. Al-Amin's opinion that Plaintiff was capable of only "light work with additional imitations," yet, without any explanation, ultimately determined that Plaintiff had the RFC to perform medium work with additional limitations.  See AR 58, 68, 73–74.

Accordingly, the Court finds that the ALJ erred in failing to provide specific and legitimate reasons for rejecting Dr. Al-Amin's opinion about Plaintiff's lifting ability.

### 2. Whether the ALJ Erred in Rejecting Portions of Dr. Al-Amin's Opinions As Vague

The Commissioner argues that it was reasonable for the ALJ to deem the terms "problematic" and "prolonged" vague and, therefore, to not find specific limitations on Plaintiff's abilities based on those terms. Ans. Br. at 20. The Commissioner correctly notes that the ALJ need not accept everything in a medical provider's opinion in order to consider the opinion substantial evidence. Ans. Br. at 20; see Magallanes, 881 F.2d at 753. However, the Commissioner's Answering Brief does not address Plaintiff's argument that the regulations required the ALJ to contact Dr. Al-Amin, the consultative examiner, for clarification of her report. Opening Br. at 21–24; see 20 C.F.R. § 404.1519p(b).

The relevant regulations provide that "[i]f the report [of the consultative examination] is inadequate or incomplete, [the ALJ] will contact the medical source who performed the consultative examination, give an explanation of [the ALJ's] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 404.1519p(b).

The Court finds that the ALJ's characterization of the words "problematic" and "prolonged" as vague serves as a reasonable basis to argue that the ALJ should have contacted Dr. Al-Amin for clarification.  See Bailey v. Colvin, No. C12-1780-RSM, 2013 WL 2243838, at *8 (W.D. Wash. May 21, 2013) (noting that the ALJ's characterization of part of a physician's assessment as "unclear" triggered a duty to conduct a further inquiry under 20 C.F.R. § 404.1519p(b)); see also Tonapetyan v. Halter, 242 F.3d 1144, 150 (9th Cir. 2001) (noting that ambiguous evidence triggers the ALJ's duty to conduct an appropriate inquiry).  Moreover, the Court finds that it was particularly incumbent upon the ALJ to conduct further inquiry where she relied on Dr. Al-Amin's opinions to conclude that Plaintiff was capable of light work, AR 68, but ultimately determined that Plaintiff's RFC was medium work with additional limitations.

While the Commissioner's Answering Brief did not address the ALJ's duty to conduct a further inquiry, counsel for the Commissioner argued at the hearing held on May 17, 2019 that under Mayes v. Massanari, the ALJ did not have a duty to contact Dr. Al-Amin for further clarification of her opinion.  See 276 F.3d 453 (9th Cir. 2001).  In Mayes, the plaintiff was diagnosed with herniated discs, but the diagnosis occurred only after the ALJ issued its decision.  Id. at 458-59.  The plaintiff argued

on appeal that the ALJ had a duty to further develop the record and determine the plaintiff suffered from herniated discs even before she was so diagnosed.  Id. at 459.  The Ninth Circuit ruled that the ALJ did not have a duty to further develop the record where the plaintiff provided no evidence to the ALJ that she suffered from herniated discs in the first place.  Id. at 459–60.  The Court finds that Mayes is in no way applicable to the instant case because it concerned the ALJ's general "duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even where the claimant is represented by counsel."  Id. at 459.  Here, on the other hand, the ALJ had a specific duty imposed by 20 C.F.R. § 404.1519p(b) to contact Dr. Al-Amin, a consultative examining physician, for clarification of her medical opinion.

    For these reasons, the ALJ erred in giving only partial weight to Dr. Al-Amin's opinion about Plaintiff's tolerance for standing and walking, and for stooping and bending.

## IV.   Whether the ALJ Erred in Her Credibility Finding

    Plaintiff also asserts that the ALJ erred in giving only partial weight to Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms.  Opening Br. at 24–29.  "In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity

of symptoms, the ALJ engages in a two-step analysis." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. "If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." Id.

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Vertigan, 260 F.3d at 1049. "The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." Id. In addition, "[a] finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Brown-Hunter, 806 F.3d at 493.

Here, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," which satisfies the first step of the analysis. AR 70; see Montalbo, 231 F. Supp. 3d at 858–59.

However, the ALJ concluded that Plaintiff's testimony concerning the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," and therefore only gave Plaintiff's testimony partial weight.  AR 70, 72.

In doing so, the ALJ summarized Plaintiff's testimony about her pain, noting that Plaintiff "continued to experience a lot of headaches, which 'varied from month to month;'" that Plaintiff "experienced six to twelve headaches per month" which lasted a few hours each; experienced "a lot of pain in her sinuses and teeth;" and "experienced fibromyalgia pain, and experienced a 'flare' during 'about one week per month.'"  AR at 59.  The ALJ also noted Plaintiff's testimony that she no longer used Gabapentin because it "caused her to become 'really tired;'" that she "experienced 'a lot of reactions to medications over the years;'" and that some of her medications "caused her to experience 'really bad anxiety.'"  AR 59. Finally, the ALJ summarized Plaintiff's testimony about her daily living activities, including that she sat outside when it was warm; listened to music; was unable to use the computer for an extended period of time because it triggered migraines; had difficulty going places when she had a migraine; and had to "lay down during approximately two hours per day."  AR 59.

The ALJ gave three reasons for rejecting Plaintiff's testimony. First, the ALJ determined that Plaintiff's testimony was inconsistent with the objective medical record; second, the ALJ discussed Plaintiff's history of medication and treatment noncompliance; third, the ALJ determined that Plaintiff's activities of daily living undermined her testimony. AR 70–72. The Court addresses each of these reasons in turn.

### A. Inconsistency with the Objective Medical Evidence

The parties agree that the ALJ could not reject Plaintiff's testimony as to the severity of her pain solely because it was not corroborated by objective evidence. Opening Br. at 25; Ans. Br. at 25; see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Once a claimant alleging disability based on subjective symptoms has produced objective medical evidence of an underlying impairment, the claimant need not produce objective medical evidence of the pain itself, or the severity thereof." Smolen v. Chater, 80 F.3d 1273, 1281–82 (9th Cir. 1996) (citing Bunnell v. Sullivan, 947 F.2d 341, 344, 347–48 (9th Cir. 1991)). Accordingly, the ALJ was required to provide other clear and convincing reasons to reject Plaintiff's testimony as to the severity of her pain notwithstanding the fact that she found inconsistencies between Plaintiff's testimony and the objective medical evidence. Accordingly, the

Court turns to the other two reasons the ALJ proffered for rejecting Plaintiff's testimony.

### B. Plaintiff's Failure to Take Her Medications

Plaintiff's testimony and the record establish that she experienced significant side-effects due to the various medications she was prescribed over the years. Indeed, Dr. Kumpinsky order a drug holiday because she was of the opinion that Plaintiff's headaches might be due in part to "medication overuse." AR 699. Dr. Belagaje opined that Plaintiff suffered from rebound headaches. AR 865.

At the ALJ hearing, Plaintiff testified about side-effects from her medication use as follows. Plaintiff stated she was unable to take Cymbalta because it "caused me to be weak kneed and I was sleeping like 14 and 16 hours a day. It gave me a really bad Fibromyalgia flare" which lasted for three months. AR 90. Plaintiff reported that Gabapentin and Neurontin caused her to experience drowsiness, unsteadiness, and that it "makes me feel drunk;" moreover, she testified that these drugs also caused excessive sleeping. AR 91; 372, 403, 407. Finally, Plaintiff testified that Dr. Cucco, her treating psychiatrist, recommended that she not take medications due to the side-effects she experiences from certain medications. AR 90; see also AR 894-98, 939-42. Dr. Cucco's treatment notes, which the

ALJ rejected without comment, indicate that Plaintiff has a "history of poor medication response."  AR 897.

The Court finds that the ALJ implicitly rejected Plaintiff's testimony regarding her inability to take medication due to side-effects by finding that Plaintiff had a history of medication non-compliance, and that this was not a clear and convincing reason for rejecting Plaintiff's testimony.  Indeed, nowhere in the ALJ's discussion of Plaintiff's medication non-compliance does she even mention that Plaintiff reported significant side-effects due to medication use.  This Court and many other courts have found that side-effects are a sufficient reason for not taking medication.  See Flynn v. Berryhill, Civ. No. 17-00151 ACK-KSC, 2018 WL 379012, at 6 n.5. (D. Haw. Jan. 11, 2018) (citing Smolen, 80 F.3d at 1284; Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984)).

Accordingly, the Court finds that Plaintiff's failure to take her medications, particularly in light of her history of side-effects, was not a clear and convincing reason to give only partial weight to Plaintiff's testimony.

## C. Inconsistency with Plaintiff's Daily Living Activities

The ALJ also gave partial weight to Plaintiff's testimony because she found it inconsistent with Plaintiff's written function reports, a third-party function report

submitted by Plaintiff's mother, and three medical records[13/] indicating that Plaintiff retained the ability to do numerous activities.  AR 72.

Specifically, the ALJ observed that Plaintiff did not need assistance with managing her daily living activities; could attend to her hygiene, dress, and use the toilet without assistance; dressed appropriately; cooked twice a week; did laundry one or two times per month; and cleaned occasionally. AR 72.  It appears that the ALJ derived these findings from Plaintiff's function report dated March 9, 2015, AR 320–31, and from the function report submitted by Plaintiff's mother dated March 11, 2015, AR 311–19.  The ALJ also noted that Plaintiff drove one or two times per week, was able to navigate public transportation, had three close friends, had a relationship with a male partner, and obtained some relief from her symptoms by doing yoga and swimming.  AR 72, 480–81, 846.  Plaintiff argues that the ALJ mischaracterized Plaintiff's testimony by discussing only the portions that made Plaintiff look functional and ignored evidence to the contrary.  Opening Br. at 28.

---

[13/] These records include a treatment note from Dr. Keith Breecher dated February 20, 2013, AR 403–04; a psychological evaluation from Dr. Louise Armstrong dated January 20, 2015, AR 479–84; and a treatment note from Dr. Masooma Rhemtulla dated August 28, 2014, AR. 845–47.

The Court agrees that the ALJ highlighted the positive aspects of Plaintiff's testimony while ignoring the negative aspects of it.  For example, Plaintiff noted that she does not bathe if she is in pain; most of her day is spent in bed in pain; she needs help doing laundry due to her pain; will often burn the food she tries to cook because her pain causes her to lack concentration; leaves the house only "a couple of times a week for an hour;" and avoids driving if at all possible because her pain caused her to get into two accidents.  AR 284-90.  She also testified that, due to pain, she needs to lie down for two hours of an eight-hour day; stated that "I have pain when I do everything;" and cannot stand more than half-an-hour without lying down.  AR 99-101.

In Garrison, the court ruled that the ALJ mischaracterized the claimant's testimony by failing to acknowledge that the claimant's daily activities were severely limited due to pain.  759 F.3d at 1016.  The Court finds that the ALJ here made the same error.  Moreover, like in Garrison, the fact that Plaintiff is able to accomplish certain daily activities is consistent with the pain she described.  759 F.3d at 1016.  The Ninth Circuit has cautioned against concluding that daily activities are inconsistent with testimony about pain "because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be

consistent with doing more than merely resting in bed all day."
Id. (citing Smolen, 80 F.3d at 1284 n.7; Fair v. Bowen, 885 F.2d
597, 603 (9th Cir. 1989)).  Moreover, the ALJ is required to
specify what testimony is not credible when identifying the
evidence that undermines a claimant's complaints.  See Burch v.
Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Reddick v.
Chater, 157 F.3d 715, 722 (9th Cir. 1998)).  Here, the ALJ
failed to so specify what portions of Plaintiff's testimony she
believed were undermined by other evidence.

  The Commissioner argues that the ALJ's findings
related to Plaintiff's activities show that she was "quite
functional, inconsistent with allegations of disability."  Ans.
Br. at 28.  Like the ALJ, the Commissioner fails to take into
account the limitations that Plaintiff described which affect
her ability to carry out daily activities, notably, that she
often cannot do anything but lie in bed due to her pain.  Unlike
the claimant in Burch, who testified that her daily activities
were limited on average twice per week, 400 F.3d at 679,
Plaintiff testified that her pain limited her on a daily basis—
so much so that she is required to lay down for two hours per
day.  AR 99–100.

  For these reasons, the Court finds that the ALJ's
reasoning was erroneous and that Plaintiff's ability to carry
out limited daily activities is not a clear and convincing

reason for rejecting her testimony. Accordingly, because the ALJ did not provide any clear and convincing reasons for rejecting Plaintiff's testimony in addition to finding it inconsistent with objective medical evidence, the ALJ erred in assigning only partial weight to Plaintiff's testimony.[14]

## V.  Harmless Error

The Court next considers whether the ALJ's errors were harmless. See Molina, 674 F.3d at 1111 (stating that a court "may not reverse an ALJ's decision on account of an error that is harmless"). "A reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." Brown-Hunter, 806 F.3d at 492.

---

[14] On May 21, 2019, the Commissioner filed a Request for Leave to File a Statement of Corrections Regarding Oral Argument, together with three proposed corrections. ECF No. 26. The Commissioner asserts that at the hearing held on May 17, 2019, Plaintiff's counsel mischaracterized the record in three respects: first, by stating that the Court cannot consider whether Plaintiff's headaches were caused by musculoskeletal tension; second, by stating that the Court cannot consider Dr. Kumpinsky's use of a "check box" form because the ALJ did not mention a "check box" form specifically; and third, by stating that the Court cannot consider Plaintiff having missed an allergist appointment to take a part-time job at a yoga retreat because it occurred before the alleged disability onset date. The Court accepts the Commissioner's proposed corrections. However, the Court has addressed arguments concerning Plaintiff's headaches, Dr. Kumpinsky's use of a "check box" form, and Plaintiff's medical non-compliance at some length. Accordingly, the Commissioner's corrections of the record in no way impact the Court's ultimate decision in this appeal, and accordingly the Court finds it unnecessary to provide Plaintiff with an opportunity to respond.

"The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Molina, 674 F.3d at 1111 (quotation marks, citation, and brackets omitted).

"An error is only harmless if it is 'inconsequential to the ultimate nondisability determination'" "or if despite the legal error, 'the agency's path may reasonably be discerned.'" Brown-Hunter, 806 F.3d at 494 (quoting Molina, 674 F.3d at 1115 and Treichler, 775 F.3d at 1099) (finding that because the ALJ did not provide any reasons upon which her conclusion was based, the agency's path could not be reasonably discerned). The Ninth Circuit has indicated that in order to consider an error harmless, the reviewing court must be able to "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." March v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (finding failure to even mention physician's opinion not harmless).

Had the ALJ given more weight to the evidence from Dr. Kumpinsky, Dr. Belgaje, Dr. Cucco, and Dr. Al-Amin, or to Plaintiff's own testimony regarding her pain, or the fact that numerous medications cause her to experience severe side-effects, the ALJ might have assigned Plaintiff an RFC more restrictive than the one given in her decision. See, e.g.,

<u>Crose v. Colvin</u>, No. C1205590, 2014 WL 118937, at *6 (W.D. Wash. Jan. 13, 2014) (holding that failure to provide specific and legitimate reasons for rejecting a physician's opinion is not harmless error where crediting the opinion would have led to a more restrictive RFC); <u>Brumfield v. Astrue</u>, No. CV 10-6690, 2011 WL 1898305, at *4 (C.D. Cal. May 19, 2011) (finding that failure to properly discount a claimant's testimony is not harmless error where properly crediting the testimony may have led to a more restrictive RFC assessment). If the ALJ had given Plaintiff a more restrictive RFC, that in turn might have led to a finding that Plaintiff is disabled.

In light of the ALJ's failure to properly consider several medical opinions in the record, and the ALJ's improperly supported rejection of Plaintiff's testimony about the intensity, persistence, and limiting effects of her pain, the Court cannot confidently conclude that no reasonable ALJ would reach a different decision. Accordingly, the ALJ's decision is not harmless and must be reversed.[15/]

---

[15/] Plaintiff has requested an award of reasonable attorney's fees and costs pursuant to 28 U.S.C. § 2412(d). Opening Br. at 30. That statute permits fees and expenses to be awarded to a prevailing party in a civil action, including proceedings for judicial review of agency action. 28 U.S.C. § 2412(d). Because this Court is reversing and remanding the ALJ's denial of benefits, Plaintiff qualifies as a prevailing party. <u>See</u> <u>Gutierrez v. Barnhart</u>, 274 F.3d 1255 (9th Cir. 2001) ("An applicant for disability benefits becomes a prevailing party for (Continued...)

## CONCLUSION

For the foregoing reasons, the Court REVERSES the Commissioner's decision denying SSDI and SSI benefits and REMANDS to the ALJ for further administrative proceedings consistent with this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, May 23, 2019.

Alan C. Kay
Sr. United States District Judge

Kimble v. Berryhill, Civ. No. 18-00301 ACK-RT, Order Reversing the Commissioner of Social Security and Remanding for Further Proceedings.

---

purposes of the [Equal Access to Justice Act] if the denial of her benefits is reversed and remanded regardless of whether disability benefits are ultimately awarded."). Accordingly, Plaintiff may file a separate motion for attorney's fees and costs, which the Commissioner shall have the opportunity to oppose.